# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHANIE E. DIXON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-182-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Stephanie E. Dixon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case REMANDED to Defendant for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 52 years old at the time of the ALJ's decision. Claimant completed her high school education.  Claimant has worked in the past as a receptionist.  Claimant alleges an inability to work beginning March 17, 2011 due to limitations resulting from status post two neck surgeries, a herniated disc in the lower back, and numbness on the left side.

### Procedural History

On April 19, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 17, 2012, an Administrative Law Judge ("ALJ") conducted a video administrative hearing with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from McAlester, Oklahoma. The ALJ entered an unfavorable decision on January 11, 2013. The Appeals Council denied review on June 26, 2014. However, by Opinion and Order entered September 30, 2015, the ALJ's decision was reversed and the case was remanded for further proceedings.

On November 29, 2016, ALJ Christopher Hunt conducted a second administrative hearing on remand in Tulsa, Oklahoma. The ALJ entered a second unfavorable decision on April 4, 2017. Claimant did not seek review of the decision before the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential

evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to make a proper RFC determination; and (2) making findings at steps four and five which were not supported by substantial evidence.

### RFC Determination

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease of the cervical spine, somatoform disorder, and affective disorder.  (Tr. 388).  The ALJ determined Claimant retained the RFC to perform less than a full range of light work.  Within this finding, the ALJ found Claimant could not work around operating moving machinery or other environmental dangers, such as unprotected heights, open bodies of water, and fast and dangerous machinery.  He also limited Claimant to no more than occasional reaching or working overhead and to simple tasks and some complex tasks.  (Tr. 390).

After consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant work as a receptionist, which was performed as sedentary, semi-skilled work.  (Tr. 396). Alternatively, the ALJ identified from the testimony of the

5

vocational expert that Claimant could perform the representative jobs of hostess or receptionist, and companion, both of which the ALJ found existed in sufficient numbers in the national and regional economies. (Tr. 397). As a result, the ALJ concluded that Claimant was not under a disability from March 17, 2011 through the date of the decision. Id.

Claimant contends the ALJ erred in arriving at the RFC. Within this argument, Claimant asserts the ALJ did not properly consider and weigh the opinion of her treating physician Dr. Brandi Guthrey.[2] On December 10, 2012, Dr. Guthrey completed a medical source statement on Claimant. She concluded Claimant could occasionally and frequently lift/carry less than ten pounds; stand/walk less than two hours in an eight hour workday; sit for less than six hours in an eight hour workday; and limited her pushing an pulling using her upper extremities. Claimant could never climb ramps, stairs, ladders, ropes, or scaffolds, kneel, crouch or crawl but could occasionally balance.

Claimant was found to be limited in reaching in all directions, including overhead, handling, fingering, and feeling. The basis for the limitation was noted as "secondary to chronic neuropathy . . .

---

[2] Once again, this Court directs this claimant's counsel to refer to documents in the Administrative Transcript filed in these Social Security cases by their Bates page numbers rather than the CM/ECF multi-part section and page number for ease of access.

."  In environmental limitations, Dr. Guthrey found Claimant was limited in exposure to vibration and hazards such as moving machinery and heights."  (Tr. 379-81).

Later, Dr. Guthrey provided a letter dated March 10, 2017 which indicated (1) Claimant had undergone two cervical spine fusions and possibly needed a third; (2) Claimant's pain had increased; (3) she had limited range of motion in multiple joints; (4) Claimant's degenerative disc disease and spinal stenosis/lumbar condition would likely be aggravated by sitting, standing, lifting, walking, and bending; (5) the extended occupation of one position would aggravate her discomfort; (6) the pain and required narcotics would likely affect her concentration; (7) Claimant's trigger finger in both thumbs causes weakness to the point she cannot grip or hold tightly to anything for any length of time; (8) Claimant demonstrates symptoms of depression and stress with weight gain and increased blood pressure.  Dr. Guthrey concludes that she believed Claimant "should be on disability."  (Tr. 1491).

The ALJ noted Dr. Guthrey's findings in the latter report. (Tr. 388).  However, he also stated nerve induction and EMG testing revealed slight evidence of median nerve compromise of the left wrist.  He cited an MRI from August 28, 2014 which showed the degenerative disc osteophyle complex at C6-7 with moderate central canal stenosis and mild bilateral neural foraminal stenosis.  He

7

noted Claimant was post fusion surgery at C4-5 with chronic myelomalacia involving the spinal cord at C5-6. Another MRI noted mild facet arthrosis at L4-5 and L5-S1. (Tr. 388-89). The ALJ then continued to assess whether Claimant met a listing. (Tr. 389).

The ALJ later inquired of his medical consultant Dr. Ronald Devore (spelled "Devere" in the transcript). Dr. Devore is a board certified neurologist who was examined at the administrative hearing by the ALJ and Claimant's counsel. Dr. Devore was heavily relied upon by the ALJ in the decision to arrive at his conclusions that the conditions from which Claimant suffered were not severe or as limiting as Claimant suggested. Dr. Devore made his conclusions based solely upon a review of the medical record. He did not examine Claimant. As such, he is the equivalent of a non-reviewing medical consultant and his opinion should be weighed no greater than such.

Dr. Guthrey is clearly a treating physician - a status not challenged in the record. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable

8

clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be

9

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While it may be gleaned from the decision that the ALJ did not give Dr. Guthrey's opinions "controlling weight," it is not at all apparent from the decision what weight the ALJ did give to this treating physician's opinion. Moreover, time after time in the decision, the ALJ deferred to Dr. Devore for his opinion as to whether objective medical evidence from the record supported an opinion or whether a listing was met. (Tr. 393-95). An ALJ cannot abdicate his fact finding and evaluative responsibilities to an expert. *See* Winfrey v. Chater, 92 F.3d 1017, 1026 (10th Cir. 1996). The ALJ's use of the expert went beyond the typical medical assistance provided by a consultative professional. Rather, Dr. Devore was utilized to discount subjective complaints and the treating physician's opinion - matters in the ALJ's purview. On remand, the ALJ shall re-evaluate Dr. Guthrey's opinion and properly utilize and weigh the opinions of the consultants employed in the case.

Claimant also challenges the credibility findings of the ALJ. The ALJ's findings on Claimant's stated functional abilities are scant. Indeed, Claimant's testimony is not cited in the opinion at all - only a boilerplate finding that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (Tr. 395). Without a recitation as to which statements the ALJ rejected and challenged for a lack of veracity, this Court is unable to evaluate the adequacy of the ALJ's determination on Claimant's credibility. On remand, the ALJ shall properly evaluate Claimant's credibility and the statements being evaluated in accordance with Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

**Step Four and Five Analysis**

Since the ALJ did not properly weigh and evaluate the opinion of Dr. Guthrey or properly assess Claimant's credibility and improperly relied upon the non-reviewing consultant, the ALJ shall also re-evaluate the RFC and the hypothetical question posed to the vocational expert.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth

sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the case is REMANDED to Defendant for further proceedings consistent with this Opinion and Order**.

IT IS SO ORDERED this 28th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE